**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIJENDRA SINGH, | |
| Petitioner, | No. C 09-03012 JSW |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS.** |
| ERIC HOLDER, JR., et al., | |
| Respondents. | |

**INTRODUCTION**

Petitioner, Vijendra Singh ("Petitioner"), has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is in Respondent's custody pursuant to an order by an Immigration Law Judge denying him release on bond. Having considered the parties' papers, relevant legal authority, and the record in this case, the petition for writ of habeas corpus is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is an immigrant from Fiji who has been a legal permanent resident since 1981. (Petition, ¶ 11; Declaration of Ila C. Deiss ("Deiss Decl."), Ex. C.) In December 2003, Petitioner was convicted for Receiving Stolen Property in violation of California Penal Code § 496(a), and was sentenced to a period of confinement in excess of one year or greater. (Petition, ¶ 6; Deiss Decl., Ex. C.) In March 2005, Petitioner was convicted for Petty Theft

with Priors under Penal Code §§ 666 and 484(a). In January 2006, he was convicted of Receiving Stolen Property in violation of Penal Code § 496(a). (Petition, ¶ 6; Deiss Decl., Ex. A.)

In April 2007, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner, alleging removability based on the 2005 and 2006 convictions. (Deiss Decl., Ex. A.) In September 2007, DHS amended the charges to include Petitioner's 2003 conviction for Receiving Stolen Property. (Petition, ¶¶ 14-15; Deiss Decl., B.) The Immigration Judge ("IJ") found Petitioner removable on the basis of the charges and pretermitted his application for cancellation in light of his 2003 aggravated felony conviction for Receiving Stolen Property. (Deiss Decl., Ex. C.) Petitioner appealed the finding of removability to the Board of Immigration Appeals ("BIA"), and he asserted that the IJ erred in finding him removable on the basis of the commission of an aggravated felony. (Petition, ¶ 16.) In March 2008, the BIA affirmed the IJ's decision. (Petition, Ex. B at 28-32.) Petitioner appealed the BIA decision to the Ninth Circuit of Appeals, which granted a stay of removal in August 2008. (Petition, ¶ 16; Return at 2.) The case is currently pending before the Ninth Circuit.[1]

On September 25, 2008, DHS held a bond redetermination hearing before an IJ to determine whether Petitioner was eligible for bond, pending judicial review of his administratively final order of removal, or whether he was ineligible for bond because he posed a flight risk or a danger to the community. (Petition, Ex. D.)

At the bond hearing, Petitioner introduced into evidence an affidavit from his wife (Mrs. Singh"). (Petition, Ex. B ("Mrs. Singh Decl.").) Petitioner alleges, and Respondent does not dispute, that before the bond hearing commenced, the Government stipulated that Mrs. Singh's declaration would be submitted without cross-examination. (Petition, Ex. A, ¶ 2.) Mrs. Singh stated in her declaration that Petitioner's friends "introduced him to drugs and other misdemeanor trouble," and that the "trouble . . . [which] was numerous . . . [included] several arrests for being under the influence of drugs . . . [and] several petty theft and receipt of stolen

---

[1] *Singh v. Holder*, No. 08-71682.

2

1   property convictions." (Mrs. Singh Decl., ¶¶ 8-9.) After Petitioner completed his testimony,
2   the Government asked to cross examine Mrs. Singh regarding two charges of domestic violence
3   that appeared on Petitioner's criminal record. (Petition, Ex. A at 1, ¶ 2.) Mrs. Singh testified
4   that she was not the one who brought the charges against Petitioner, that she was not afraid of
5   him, and that she did not consider him a threat. (*Id.*) The IJ said that her testimony was
6   "biased" in light of her relationship to the Petitioner. (*Id.*)

Petitioner testified that he had remained drug free during the duration of his detention, and presented evidence in support of his eligibility of release on bond such as letters of support from friends, family, and a former employer who indicated that he would rehire Petitioner at his autoshop. (*Id.* at 1, ¶ 3.) Petitioner's counsel alleges, and Respondent does not dispute, that the Government did not argue that Petitioner presented a flight risk or present evidence to that effect, and that the IJ orally found Petitioner not to be a flight risk. (*Id.*)

Near the end of the bond hearing, the IJ stated that Petitioner bore the burden of proving that he was not a flight risk or danger to the community. (Petition, Ex. A, 1, ¶ 4.) When Petitioner objected and informed the IJ that the Government bore the burden of proof, the IJ acknowledged his error. (Petition, Ex. A, 2, ¶ 4.)

Petitioner alleges, and Respondent does not dispute, that during the hearing, but after Petitioner testified, DHS introduced into evidence Petitioner's criminal record ("RAP sheet"). The RAP sheet showed over 40 contacts between Petitioner and law enforcement between 1999 and 2006. (Petition, Ex. D.) The IJ found that there were "approximately 10 convictions for criminal offenses such as domestic violence, [being] under the influence and possession of a controlled substance, theft and receiving stolen property; at least 3 bench warrants for failure to appear and 2 convictions for probation violations." (*Id.*) The IJ noted that Petitioner "admitted to his drug addiction since 2000 but has not ingested any controlled substance since his incarceration. He never successfully completed a drug rehabilitation program." (*Id.*) The IJ denied bond because he found Petitioner to be both a flight risk and a danger to the community based on Petitioner's criminal record, history of failures to appear, and the fact that he was under an administratively final order of removal. (*Id.*)

3

In October 2008, Petitioner served a motion to produce a transcript of the bond hearing. (Petition, Ex. E.) The BIA returned a notice which stated that "[t]ranscripts are not prepared for BOND appeals," but that one may listen to "tapes of the hearing" upon request to the Immigration Court. (Petition, Ex. F.)

In December 2008, Petitioner appealed the bond redetermination order and the BIA's refusal to produce a transcript of the bond hearing. (Petition, Ex. G.) In January 2009, the BIA denied Petitioner's bond appeal and affirmed the IJ's assessments that Petitioner presented a danger to the community and a posed a flight risk. (Petition, Ex. H.) The BIA also rejected Petitioner's request for a transcript of the hearing, and noted that "the Immigration Judge's bond memorandum sets forth an account of what transpired at the respondent's bond hearing and the basis for his decision." (*Id.*)

Petitioner filed a petition for writ of habeas corpus in this Court on July 6, 2009, and alleged that his bond hearing lacked adequate procedural protections, in violation of his Fifth Amendment right to procedural due process, and that his continued detention violates his Fifth Amendment right to substantive due process. This Court issued an Order to Show Cause why a writ of habeas corpus should not be granted on July 7, 2009. Respondent filed a Return in Opposition with Exhibits on September 4, 2009. Petitioner filed a Traverse on October 5, 2009.

## DISCUSSION

Petitioner raises several alleged due process violations. These claims fail because they either are attempts to have this Court review matters that it cannot or because they lack substantive merit.

**A.  Petitioner's Procedural Due Process Claim Is Denied.**

Petitioner alleges his bond hearing was rife with procedural due process violations. Petitioner's procedural due process claims fall into two categories: requests to evaluate the discretionary judgment of the IJ and allegations of constitutional, structural failures within the proceeding itself. The Court denies Petitioner's procedural due process claim.

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). "[T]he Fifth

4

Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (internal citations omitted). "Even where detention is permissible, however, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). When an alien's removal has been stayed pending judicial review of the order of removal, the alien is detained by the Attorney General's discretionary authority pursuant to 8 U.S.C. § 1226(a). *Casas-Castrillon*, 535 F.3d at 950-51. Procedural due process requires such aliens be afforded an individualized bond determination before a neutral decision maker, such as an immigration judge, at which time the government must establish that the alien is a flight risk or danger to the community. *Id.*; *see also Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005.)

This Court, however, cannot evaluate the discretionary judgments of the Attorney General in section 1226(a) proceedings because they "shall not be subject to review" and "no court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or . . . denial of bond or parole." 8 U.S.C. § 1226(e). However, claims that the discretionary process itself was constitutionally or structurally flawed are "cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002). Due process violations in immigration proceedings are subject to harmless error analysis. *Prieto-Romero*, 534 F.3d at 1066 (citing *Getachew v. INS*, 25 F.3d 841, 845 (9th Cir. 1994)). Finally, "Petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001.)

    **1.**  **To the extent Petitioner's procedural due process claims are premised on the IJ's discretionary authority, this Court cannot review them.**

Petitioner's procedural due process rights, as afforded to him by *Casas-Castrillon* and *Prieto-Romero*, were satisfied because Petitioner received an individualized bond hearing before a neutral IJ. Additionally, Petitioner exercised his right to appeal the bond denial to the

5

1 BIA. (Petition, Ex. H.) Therefore, Petitioner's *Casas-Castrillon* procedural due process rights
2 were satisfied. *See Carrilo-Lozano v. Stolc*, 2009 WL 3818841, at *5 (D. Ariz. Nov. 13, 2009)
3 (finding that alien's procedural due process rights were satisfied where alien received *Casas-*
4 *Castrillon* bond hearing before an IJ).

5 Petitioner argues that he was denied procedural due process during the bond hearing
6 because: (1) the IJ admitted Petitioner's RAP sheet after the close of Petitioner's testimony, and
7 thereby deprived him of an opportunity to examine and rebut it; (2) the IJ ignored a stipulation
8 that the Mrs. Singh's affidavit would be submitted without cross-examination, and permitted
9 Respondent, and not Petitioner, to cross-examine her; (3) the IJ engaged in arbitrary and
10 capricious decision-making in finding flight risk; (4) and the IJ applied an overly broad
11 definition of dangerousness.

12 Although phrased in the language of procedural due process violations, Petitioner invites
13 this Court to do something that it cannot: review and "second-guess the IJ's discretionary
14 assessment[s]." *Prieto-Romero*, 534 F.3d at 1067. The IJ's reliance on evidence of Petitioner's
15 criminal history or the IJ's credibility findings based on cross-examination relating to witness
16 testimony are squarely within the province of the IJ's exercise of discretion.[2] Inquiries into
17 arbitrary and capricious decision-making or the weight given to evidence indicating
18 dangerousness similarly implicate the discretionary functions of the IJ. The IJ has the ability to
19 make bond determinations "based on any information that is available to [him] or that is
20 presented to him . . . by the alien or the Service." 8 C.F.R. § 1003.19(d)(2006). These
21 discretionary judgments relating to detention and denial of bond are unreviewable by courts. 8
22 U.S.C. § 1226(e); *see also Verdugo-Gonzalez v. Ridge*, 2008 U.S. Dist. LEXIS 3667, at *11
23 (S.D. Cal. Jan. 17, 2008) (declining to review IJ's discretionary findings of flight risk and
24 danger to community and property); *Lomeli v. Holder*, 2009 WL 2563514, at *8 (D. Ariz. Aug.
25 18, 2009) (noting that challenge to IJs decision to consider and not consider certain evidence are

---

[2] For the same reason, the Court cannot examine Petitioner's claim that the RAP sheet was introduced into evidence without authentication, and therefore did not comply with 8 C.F.R. § 287.6 (authentication requirements in immigration proceedings). (Petition, Mem. of Pts. and Auths. at 15).

6

"discretionary decisions by the IJ [that] do not rise to the level of constitutional magnitude" and should be exhausted administratively); *Singh v. Chertoff*, 2009 WL 1098493, at *4-5 (S.D. Cal. Apr. 23, 2009) (finding no jurisdiction to review claims of IJ's arbitrary and capricious decision-making, improper reliance on stale convictions, and failure to weigh evidence). Accordingly, this Court denies the petition on this basis.

### 2. To the extent Petitioner's procedural due process are not premised on the IJ's discretionary authority, Petitioner's claims are denied because they lack substantive merit.

Petitioner also alleges that procedural due process violations arose when: (1) the IJ improperly placed the burden of showing danger to the community and flight risk on the Petitioner; and (2) Respondent refused to provide a transcript of the bond hearing, and thereby deprived Petitioner of the ability to demonstrate the procedural inadequacy of his bond hearing. Both of these claims fail on the merits.

#### a. The IJ correctly placed the burden of proof on the government to show flight risk and danger to the community.

Petitioner claims that the IJ misstated that Petitioner bore the burden of proof at the conclusion of the hearing. (Petition, Ex. A, ¶ 4.) According to Petitioner, even though the IJ acknowledged his error when corrected by Petitioner's counsel, the IJ must have "analyzed the case under the wrong legal paradigm." (Petition, ¶ 30.) Petitioner claims he was prejudiced because Respondent enjoyed "all the benefits of introducing rebuttal evidence and reneg[ing] on an earlier stipulation due to his misinterpretation of the appropriate legal standards." (*Id.*)

The burden of establishing flight risk or danger to the community in a *Casas-Castrillon* bond hearing rests with the government. *Casas-Castrillon*, 535 F.3d at 951 (citing *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996)). Even if the IJ improperly shifted the burden, Petitioner must still demonstrate prejudice. *Prieto-Romero*, 534 F.3d at 1066-67 (internal citations omitted). In *Casas-Castrillon* bond hearings, the IJ may base his finding of danger to the community or flight risk on the factors set forth in *Matter of Guerra*, 24. I & N. Dec. 37 (BIA 2006). *Prieto-Romero*, 534 F.3d at 1066 (internal citation omitted). These factors may include the alien's record of appearances in court or the alien's criminal record; the IJ has "broad discretion in deciding the factors that he may consider" and "may choose to give greater weight

7

to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24. I & N. Dec. at 40.

By Petitioner's own account, the IJ acknowledged his error. (Petition, Ex. A, ¶ 4.) The IJ's written decision reflects that the government bore the burden of showing danger to the community and flight risk. The IJ found that Petitioner was a danger to the community and a flight risk based on his "lengthy criminal record," history of failures to appear, and the fact that he is under an administratively final order of removal. (Petition, Ex. D.) Additional evidence in the record includes Petitioner's convictions described in his Notices to Appear, his admitted drug use, and Mrs. Singh's testimony regarding Petitioner's "numerous" instances of trouble, including "several arrests for being under the influence of drugs." (Mrs. Singh's Decl., ¶ 9; Petition, Ex. D; Diess Decl., Exs. A, B.) Given both the IJ's acknowledgment that the government bore the burden, and the fact that the IJ's written decision reflects that the burden was properly placed on the government, Petitioner has failed to show a procedural due process violation or resulting prejudice. *See Lomeli*, 2009 WL 2563514 at *8-9 (finding that where IJ was presented with evidence supporting the finding of danger and the denial of bond, Petitioner failed to demonstrate prejudice).

### b. Petitioner has no procedural right to bond hearing transcripts, and the BIA's refusal to produce transcripts did not prejudice Petitioner.

Petitioner argues that the BIA's refusal to produce transcripts of the bond hearing "severely impedes" his ability to challenge the legality of his continued detention by "raising issues of constitutional violations." (Petition , ¶ 35.)

The lack of a transcript or record does not render Petitioner's bond proceeding procedurally deficient. Petitioner concedes that "no authority explicitly recognizes the right to transcripts of the bond hearing." (Petition, Mem. of Pts. and Auths. at 20.) This Court agrees. In INA bond redetermination hearings, there is no statutory or regulatory requirement of a verbatim record. *See* 8 C.F.R. § 1003.19(d) (2006); *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977) ("[T]here is no right to a transcript of a bond redetermination hearing."). Neither *Tijani* or *Casas-Castrillon* mandate that a bond hearing be recorded or transcribed to

8

1  meet procedural due process requirements. Petitioner has no established procedural right to
2  production of a bond hearing transcript, and, even if such a right existed, Petitioner has not
3  demonstrated prejudice because of the BIA's refusal to produce a transcript of Petitioner's
4  *Casas-Castrillon* bond hearing. *See Singh*, 2009 WL 1098493 at *5 (finding no procedural due
5  process requirement mandated by *Tijani* or *Casas-Castrillon* to record bond hearings).
6  Accordingly, Petitioner's procedural due process claim is denied.

**B.     Petitioner's Substantive Due Process Claim Is Denied.**

Petitioner premises his substantive due process claim on the argument that his continued discretionary detention is unauthorized because he raises a substantial argument that he is unremovable. (Traverse at 13.) Petitioner's claim is denied because his substantive argument attacking removability is not reviewable by this Court.

Substantive due process concerns arise when an alien's detention is not statutorily authorized or when the alien is detained in a "removable-but-unremovable limbo" where the alien cannot be returned to his receiving country. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (internal citations and quotations omitted). In *Zadvydas*, the Supreme Court recognized that substantive due process concerns could be implicated by indefinite post-removal detentions, where removal is unforeseeable. 533 U.S. at 682, 689. There, the Court was confronted with aliens subject to administratively and judicially final orders of removal, but who nonetheless could not be removed because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country. *Id.* The Court held that after a presumptively reasonable six-month period of post-removability detention under 8 U.S.C. § 1231(a)(6), these aliens were entitled to release upon successfully demonstrating that their detention was indefinite because there was "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

Although Petitioner attempts to liken his situation to the case presented to the Court in *Zadvydas*, the Ninth Circuit has held that because section 1226(a) detentions pending final judicial determinations of removability have "an obvious termination point," these detentions

9

are not "indefinite" in the sense of the "removable-but-unremovable limbo" experienced by the petitioners in *Zadvydas*. *Prieto-Romero*, 534 F.3d at 1062-65.

Here, Petitioner is detained under section 1226(a), has received the bond hearing mandated by *Casas-Castrillon*, and the IJ denied bond. (Petition, Ex. D.) Petitioner also exercised his right to appeal the IJ's decision, and the BIA affirmed the bond denial. (Petition, Ex. H.) The Ninth Circuit will at some definite future point rule on the issue of Petitioner's removability. Petitioner, therefore, is not stuck in the "removable-but-unremovable limbo" that triggered the substantive due process concerns of *Zadvydas*. Furthermore, Petitioner presents no evidence that he will be unable to return to Fiji, either because of Fifji's refusal to accept him or for lack of a repatriation treaty with the United States. *Prieto-Romero*, 534 F.3d at 1063. This Court also finds *Nadarajah v. Gonzales* distinguishable, because in that case, the alien had two successful BIA asylum petitions and protections afforded under the Convention Against Torture. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1071, 1081-82 (9th Cir. 2006)); *see also Prieto-Romero*, 534 F.3d at 1064 (discussing *Nadarajah*). Petitioner's case here does not present a similar "improbability of his foreseeable removal." *Prieto-Romero*, 534 F.3d at 1064 (internal citation omitted).

Rather, Petitioner's argument is a backdoor attempt to have this Court review the underlying merits of Petitioner's removal, which this Court cannot do. The REAL ID Act of 2005 ("RIDA"), Pub. L. No. 109-13, 119 Stat. 231, 310-311 (2005), eliminated all federal district court jurisdiction over final orders of removal, and vested the courts of appeal with the "sole and exclusive means for judicial review of an order of removal." *See* 8 U.S.C. § 1252(a)(5); *see also Nadarajah*, 443 F.3d at 1075-76. In Petitioner's petition for review of his removal order to the Ninth Circuit, he asserts "that his conviction under California Penal Code § 496(a) is not an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G) and thus he is not removable." (Petition, ¶ 40.) Petitioner "proposes that this Court apply the 'substantial argument' standard and examine the merits of Petitioner's underlying claim to determine if Petitioner is entitled to habeas relief." (Traverse at 13.) This Court lacks jurisdiction to analyze the merits of the underlying claim that California Penal Code § 496(a) is not categorically an

10

1  aggravated felony because the subject matter relates to a final order of removability.
2  Petitioner's claim attacking his removability is currently and properly pending review before
3  the Ninth Circuit.
4        Petitioner's substantive due process argument, therefore, could be interpreted as a
5  thinly-veiled attempt to side-step the jurisdiction-stripping provision of RIDA and obtain a
6  second bite at the apple with simultaneous district court and appellate review of the merits of
7  the same underlying claim.  Accordingly, the Petition is denied on that basis.[3]

## CONCLUSION

For the above-mentioned reasons, the petition for writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: February 25, 2010

                                                  _____
                                                  JEFFREY S. WHITE
                                                  UNITED STATES DISTRICT JUDGE

---

[3]     This Court also notes that Petitioner's contention that he is not removable because his conviction under California Penal Code § 496(a) is not an aggravated felony would not likely constitute a meritorious and substantive argument against his removal given the Ninth Circuit's recent decision in *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1060 (9th Cir. 2009) (holding that felony conviction for Receipt of Stolen Property under California Penal Code § 496(a) categorically qualifies as an aggravated felony for ineligibility for cancellation of removal purposes).

11